# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | * |
| JOE HAND PROMOTIONS, INC., | |
| | * |
| Plaintiff, | |
| | * |
| v. | |
| | *          Civil No. 24-599-BAH |
| KENYA JOHNSON SMITH ET AL., | |
| | * |
| Defendants. | |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Joe Hand Promotions, Inc. ("Joe Hand" or "Plaintiff") filed this action against Kenya Johnson Smith ("K. Smith"), Andre L. Smith ("L. Smith") (collectively, the "Smiths"), and Studio 10Ten10, LLC ("Studio") (collectively, "Defendants") alleging violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605, and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). ECF 8 (amended complaint). In short, this case presents a fight over the alleged unauthorized exhibition of the televised broadcast of a pay-per-view boxing match between Canelo Álvarez and Jermell Charlo, and undercard matches ("Canelo v. Charlo fight" or the "fight"), at Studio, a local establishment allegedly owned and operated by the Smiths. Perhaps unlike the televised bout itself, which went twelve rounds,[1] this legal brawl has been decidedly one-sided as neither the Smiths nor Studio ever filed an answer or otherwise responded to the lawsuit. Plaintiff now seeks default judgment against all Defendants, *see* ECF 29 (the "Motion"), and asks for

---

[1] Álvarez scored a unanimous decision victory over Charlo. *See Canelo Álvarez vs. Jermell Charlo*, Wikipedia, https://en.wikipedia.org/wiki/Canelo_%C3%81lvarez_vs._Jermell_Charlo (last visited Feb. 5, 2025.

damages and costs of $36,535, *see* ECF 29-1, at 22–23 (memorandum in support).  For the reasons that follow, the Motion is GRANTED in part and DENIED in part.

## I.    BACKGROUND

### A.  Relevant Facts

Joe Hand distributes televised boxing matches.  ECF 8, at 2 ¶ 6.  It alleges that it "is the exclusive United States commercial distributor of the . . . Canelo v. Charlo Premier Boxing Champions [pay-per-view] [b]roadcast which occurred on September 30, 2023, including all undercard matches and the entire television [b]roadcast, via encrypted closed circuit television, encrypted satellite, radio signals and/or digital streaming technology." *Id.* at 2–3 ¶ 6.  Defendants K. Smith and A. Smith reside on Wadsworth Way in Baltimore.  *Id.* at 3 ¶¶ 7–8.  Plaintiff alleges that the Smiths are the "the officers, directors, shareholders, principals, managers and/or members of [Studio]," which is "located at 530 S. Conklin St., Baltimore, MD 21224." *Id.* ¶ 9.  Plaintiff alleges that both Smiths "received a financial benefit from the operations of [Studio]" and that both exercised "close control over [its] internal operating procedures and employment practices" on September 30, 2023.  *Id.* at 4 ¶¶ 11–12.

Joe Hand alleges that Defendants created and shared a social media post advertising a "Fight Night Watch Party" at Studio in the days leading up to the fight.  *Id.* at 5 ¶ 16.  That advertisement indicated that patrons who paid a $40 cover charge could watch the Canelo v. Charlo fight at Studio.  ECF 8-5, at 1.  On the night of the fight, Plaintiff alleges that "Defendants charged a cover charge of $40.00 per person for each patron entering [Studio]" to watch the fight.  ECF 8, at 5 ¶ 14.  However, Plaintiff alleges that Defendants lacked the required "commercial exhibition rights" and failed to pay "the commercial licensing fee" to show the fight as a ticketed event at Studio.  *Id.* at 5 ¶ 17.  Instead, Plaintiff says that Defendants obtained the Canelo v. Charlo fight through "alternative, illegal, and illicit means," *id.*, likely by purchasing a license for "non-

commercial personal use only," which is "greatly discounted compared to the rates required for commercial entities," *id.* at 6 ¶ 22.

Plaintiff's motion for default judgment provides additional information and documentation in support of Plaintiff's claims. Plaintiff provides proof that it entered into a "Distributorship Agreement in which Plaintiff received the exclusive distribution rights . . . for the September 30, 2023, [fight]." ECF 29-1, at 3 (citing ECF 29-2, at 1 (commercial licensing agreement)). Plaintiff explains that its broadcast of the fight "originated via encrypted closed-circuit television, encrypted satellite, radio signals and/or digital streaming technology over the internet and was subsequently retransmitted via Cable and/or satellite television protocol streaming technology over Content Distribution Networks ('CDN's') such as satellite, cable or digital technology." *Id.* The fight "was also available for non-commercial, private viewing for personal use Pay-Per-View purchase and consumption via the internet." *Id.* (citing ECF 29-2, at 1, 4). The agreement also granted Joe Hand the "right as exclusive licensee . . . to assert independent claims, including under the Communications and/or Copyright Acts, against commercial infringers that receive and exhibit [the fight] without authorization." *Id.*

Plaintiff notes that "commercial establishments," like Studio, could "obtain lawful authority to publicly exhibit the [fight] to its patrons," but such establishments had to pay Joe Hand "for a license and contract," the cost of which would be "based upon the size of the establishment and its fire code occupancy." ECF 29-1, at 5 (citing ECF 29-7, at 3 (affidavit of Joseph P. Hand, III, President of Joe Hand)). Plaintiff avers that it "maintains a list of authorized and legal locations that paid the required license fee to exhibit [the fight]." *Id.* (citing ECF 29-9, at 1 (list of authorized commercial locations showing the fight in Baltimore)). That list does not include Studio. *Id.* In advance of the fight, Plaintiff hired "investigative agencies to retain auditors to visit various locales

on the night of September 30, 2023, to determine whether any establishments were intercepting and publicly displaying [the Canelo v. Charlo fight] without authorization from, or payment to, [Joe Hand]." ECF 29-1, at 5. Studio was one establishment an auditor "observed exhibiting [Canelo v. Charlo] without authority to do so." *Id.*

Auditor Donovan Garrett entered Studio during the fight and saw the fight being shown to patrons on two televisions. *Id.* Plaintiff attaches a report summarizing Garrett's visit to Studio, ECF 29-10, and provided to the Court with a link to a recording of seven minutes of Garrett's visit. ECF 29-1, at 6. Plaintiff also provides screenshots from Garrett's video showing both Smiths present at Studio on the night of September 30, 2024, with A. Smith collecting money at the door and K. Smith providing food and drinks inside the establishment. ECF 29-3. Plaintiff provides a series of social of media posts identifying K. Smith and A. Smith as a married couple, *id.*, celebrating the June 17, 2022 opening of Studio, which the Smiths' describe as a "business partner[ship,]" ECF 29-4, and advertising events at Studio, ECF 29-5.

**B. Procedural History**

Plaintiff initially filed suit against K. Smith and Studio on February 27, 2024. ECF 1. Summonses were issued for both K. Smith and Studio that same day. ECF 4. Plaintiff promptly filed an amended complaint on February 28, 2024, adding A. Smith, se*e* ECF 8, and a summons was issued for A. Smith that day, *see* ECF 9. In the amended complaint, Plaintiff sued all Defendants in three counts alleging: 1) "the unauthorized reception and publication or use of radio communications" in violation of 47 U.S.C. § 605(a); 2) "the unauthorized reception, interception and exhibition of any communications service offered over a cable system" in violation of 47 U.S.C. § 553; and, 3) a violation of "Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)," alleging that the "pira[ting of] . . . and advertisement of [the Canelo v. Charlo fight] . . . without having the legal right to publicly exhibit same is misleading and impacts the decision of an

4

establishment to pay the licensing fee when the unfair competition by false advertising of the Defendant herein impacts their business choices." ECF 8, at 9–12.[2]  Plaintiff served all documents in the case on Studio, K. Smith, and A. Smith by mail and by leaving a copy at their last known address on March 13, 2024.  *See* ECF 14 (K. Smith); ECF 15 (Studio); ECF 13 (A. Smith).[3]

On April 29, 2024, and after Defendants failed to respond to the lawsuit, Judge Aslan, to whom this case was originally assigned, ordered Plaintiff to file and serve by mail a motion for entry of default, or to explain why default was inappropriate.  ECF 16, at 1.  Plaintiff responded by filing a motion for clerk's entry of default on May 6, 2024, ECF 17, including an affidavit from Plaintiff's counsel attesting that Defendants had been properly served but had failed to answer the amended complaint or to otherwise defend this action.  ECF 17-1, at 1–2.  Plaintiff also filed a certificate of service noting that on May 6, 2024, Defendants were served with the motion for entry

---

[2] Plaintiff demanded declaratory judgment that "Defendants' unauthorized exhibition of [the Canelo v. Charlo fight], violated the Federal Communications Act and that such violations were committed willfully and for purposes of Defendants' direct or indirect commercial advantage or for private financial gain" as well as damages.  ECF 8, at 12–13.  Specifically, as to count one, Plaintiff seeks "recovery between $1,000 and $10,000 as to each Defendant pursuant to 47 U.S.C. §605 and enhanced damages of up to $100,000.00 for each defendant, jointly and severally, for their willful violation of 47 U.S.C. §605." *Id.*  As to count two, Plaintiff seeks "statutory penalties in an amount, in the discretion of this Court, against Defendants, jointly and severally, of up to the maximum amount of $10,000.00 as to each Defendant for their violation of 47 U.S.C. §553 and enhanced damages of up to $50,000.00 for their willful violation of 47 U.S.C. §553." *Id.* at 13. Plaintiff also seeks "[a]n injunction prohibiting defendants from receiving, transmitting, and exhibiting Plaintiff's programming publicly without commercial license[, a]ttorney's fees, interest, costs of suit as to each Defendant pursuant to 47 U. S. C. § 605 (e)(3) (B) (iii); and . . . [a]ttorney's fees, interest, costs of suit as to each Defendant pursuant to 47 U. S. C. §553 (c)(2)(C)." *Id.* Plaintiff demands "Defendant's profits, both actual and engorgement, any damages sustained by the plaintiff, and, the costs of the action" pursuant to "15 U.S.C. § 1117(a)." *Id.*

[3] The docket reflects that A. Smith was served with the summons generated at ECF 4, not ECF 9. *See* ECF 13. However, the summons at ECF 4 was directed to K. Smith and Studio, not A. Smith, as A. Smith had not yet been sued at the time it was issued.  The Court is nonetheless satisfied that A. Smith was properly served as the process server explicitly notes on the summons return for A. Smith that both the complaint *and the amended complaint* were left at A. Smith's address and mailed to A. Smith at that same address.  ECF 13, at 1.

of default and the relevant supporting documents. ECF 18. Default was entered as to K. Smith and A. Smith on May 7, 2024, ECF 19, and notices of default were sent to both K. Smith and A. Smith that same day. *See* ECF 20 (K. Smith); ECF 21 (A. Smith).[4] The notices advised both K. Smith and A. Smith that they had "thirty (30) days from [May 7, 2024] to file a motion to vacate the order of default." *Id.* at 1. Both A. Smith and K. Smith were warned that "[i]f you do not take action by this date, the Court will act promptly on any pending motions for entry of default judgment, which may result in a monetary judgment against you." *Id.*

On June 7, 2024, the Court received hand-delivered and handwritten letters from both K. Smith and A. Smith. *See* ECF 22 (K. Smith); ECF 23 (A. Smith). K. Smith's letter acknowledged receipt of "a notice of default in reference to the above[-]mentioned case n[umber]" but noted that K. Smith was "not in agreement of this matter." ECF 22, at 1. A. Smith acknowledged only the receipt of "a court notice," noted that A. Smith was also "not in agreement with the notice," and

---

[4] The first page of Plaintiff's motion for entry of default pursuant to Fed. R. Civ. P. 55(a) mentioned only K. Smith and A. Smith. *See* ECF 17, at 1 (seeking a "certificate of default" as to K. Smith and A. Smith "[i]ndividually, and as officers, directors, shareholders, principals, managers and/or members of [Studio]"). The attachments to Plaintiff's motion clearly sought an entry of default as to all defendants, Studio included. *Id.* at 17-1, at 2 (requesting that "default of the Defendants, KENYA JOHNSON SMITH, ANDRE L. SMITH and STUDIO 10TEN10 LLC, be entered herein by the Clerk of the Court" (capitalization in original)). The proposed order attached by Plaintiff also sought an entry of default as to all defendants in this action. *See* ECF 17-2, at 1–2. However, the Clerk only entered default as to A. Smith and K. Smith. ECF 19, at 1. Subsequent filings by Judge Aslan made clear, however, that the Court was proceeding as though the Clerk had entered default as to all Defendants. *See* ECF 26, at 1–2 (directing Plaintiff to file and serve by mail a motion for default judgment on all Defendants). Given that Judge Aslan's July 1, 2024 order and the subsequent motion filed by Joe Hand was directed at all Defendants and served on Studio's resident agent and both of its authorized representatives, *see* ECF 8-3, at 1, the Court will proceed with analysis under Fed. R. Civ. P. 55(b) as to all Defendants. Such an approach is required here because Plaintiff alleges that Defendants are jointly and severally liable. ECF 8, at 12. In such cases, it is not appropriate to enter default judgment against some defendants and not others. *See Queen v. Ctr. for Sys. Mgmt., Inc.*, Civ. No. ELH-10-3518, 2012 WL 4058044, at *2 (D. Md. Sept. 13, 2012) (Report and Recommendation by Magistrate Judge Gesner adopted by Judge Hollander on October 3, 2012); *Arbor Care Tree Experts, Inc. v. Arbor Care Tree Experts & Outdoor Srvs.*, No. ELH-10-1008, 2011 WL 219636, at *1–2 (D. Md. Jan. 21, 2011).

stated that A. Smith was "unaware of any wrong[-]doing as it relates to this case." ECF 23, at 1. These are the only filings in the case from any defendant.

On July 1, 2024, Judge Aslan issued a short order noting that the letters failed to "constitute a motion to vacate the order of default." ECF 26, at 1. Judge Aslan continued by providing clear directives to all parties, specifically Defendants were advised that "if they do not take any action in response to the Clerk's Entry of Default, the Court will act promptly on any motion for entry of a default judgment against them," and Plaintiff was advised that it "must file and serve by mail a motion for default judgment on Defendants K[.] Smith, Studio 10TEN10 LLC, and A[.] Smith, or provide a report as to why such motions would be inappropriate." *Id.* at 2.

On July 23, 2024, Joe Hand filed its motion seeking default judgment against all Defendants as to count one only. *See* ECF 29-1, at 12. Plaintiff seeks to recover under 47 U.S.C. § 605(a) and is seeking maximum statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II) . . . for the sum of $10,000.00 for Defendants['] public exhibition of Plaintiff's [b]roadcast [of the Canelo v. Charlo fight] without authorization or a license." *Id.* at 16. Plaintiff also seeks "enhanced damages" of "$25,000" for Defendants' willful violation of § 605, *id.* at 22–23, and costs pursuant to § 605(e)(3)(B)(iii). *Id.* at 23. All totaled, Plaintiff seeks default judgment as to count one, as to all Defendants, "jointly and severally," and in an amount of no more than $36,535. *Id.* at 23. Though the motion for default judgment was served on Defendants over five months ago, Defendants chose not to respond to it and the time to do so has long since passed. The docket further reflects that though served almost a year ago, no defendant has responded to the lawsuit beyond the hand-delivery of the two short letters by the Smiths disclaiming all liability.

## II.    **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  The Court may conduct hearings or make referrals when necessary to determine the damages, establish the truth of any allegation by evidence, or investigate any other matter.  Fed. R. Civ. P. 55(b)(2).  Thereafter, the court may enter default judgment at the plaintiff's request and with notice to the defaulting party.  *Id.*

A plaintiff is not automatically entitled to default judgment simply because no defendant has responded.  Rather, entry of default judgment is left to the sound discretion of the court.  *See, e.g.*, *Choice Hotels Int'l, Inc. v. Jai Shree Navdurga, LLC*, Civ. No. DKC-11-2893, 2012 WL 5995248, at *1 (D. Md. Nov. 29, 2012); *see also Choice Hotels Int'l, Inc. v. Austin Area Hospitality, Inc.*, Civ No. TDC-15-0516, 2015 WL 6123523, at *1 (D. Md. Oct. 14, 2015).  Although the United States Court of Appeals for the Fourth Circuit maintains a "strong policy" in favor of deciding cases on their merits, *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment may be appropriate when a party is unresponsive, *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

When considering a motion for default judgment, the Court takes as true all well-pleaded facts in the complaint other than those related to damages.  *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").  In exercising this task, the Court applies the pleading standards

announced in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). *See, e.g., Balt. Line Handling Co. v. Brophy,* 771 F. Supp. 2d 531, 544 (D. Md. 2011). A complaint that avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement," is insufficient to award default judgment. *See, e.g., Balt. Line Handling Co.,* 771 F. Supp. 2d at 544 ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted." (internal quotation marks omitted)). The Court "must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought." *Ryan*, 253 F.3d at 780. "The party moving for default judgment has the burden to show that the defaulted party was properly served and that the unchallenged factual allegations constitute a legitimate cause of action." *Harris v. Blue Ridge Health Servs., Inc*., 388 F. Supp. 3d 633, 638 (M.D.N.C. 2019) (internal citations and quotation marks omitted).

If the complaint avers sufficient facts from which to find liability, the Court must turn to the question of damages. *See Ryan,* 253 F.3d at 780–81. The Court must make an independent determination regarding damages and cannot simply accept as true factual allegations of damages. *See Lawbaugh*, 359 F. Supp. 2d at 422. Damages are limited to those requested in the complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). Further, while the Court may conduct an evidentiary hearing to determine damages, it is not required to do so; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See Lawbaugh,* 359 F. Supp. 2d at 422; *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (collecting cases). "Although '[p]roceeding without a hearing is the exception,' the court may award damages without a hearing if 'the record supports the damages requested,' such as through comprehensive, detailed,

and uncontroverted exhibit and affidavit evidence establishing the amount of damages." *Balt. Line Handling Co.*, 771 F. Supp. 2d at 541 (quoting *Monge*, 751 F.Supp.2d 789 at 794)).

### III.  ANALYSIS

### A. Defendants' Liability

As noted, Plaintiff seeks recovery under only 47 U.S.C. § 605.  ECF 29-1, at 12.  This is because, as Plaintiff correctly notes, "a plaintiff cannot recover under both Sections 553 and 605 of the Communications Act."[5]  *Joe Hand Promotions, Inc. v. Adilio*, Civ. No. 8:23-CV-00712-PX, 2024 WL 2977869, at *2 (D. Md. June 13, 2024); *see also Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 127 (2d. Cir. 1996).  Under § 605, "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a).  This provision covers "the unauthorized interception or receipt of 'digital satellite television transmissions.'" *J & J Sports Prods., Inc. v. Beer 4 U, Inc.*, Civ. No. TDC-18-2602, 2019 WL 5864499, at *3 (D. Md. Nov. 8, 2019) (quoting *J & J Sports Prods., Inc. v. Mayreal II, LLC*, 849 F. Supp. 2d 586, 588 n.3 (D. Md. 2012)).

"To establish liability [under 47 U.S.C. § 605(a)] as to a corporate defendant, Joe Hand must show that 'it had the exclusive commercial distribution rights' to the [Canelo v. Charlo fight], and that [Studio] exhibited the [fight] 'without authorization.'" *Adilo*, 2024 WL 2977869, at *2 (citing *Beer 4 U*, 2019 WL 5864499, at *3–4).  The amended complaint and its attachments clearly establish these elements.

---

[5] "Sections 605 and 553 of 47 U.S.C. . . . are provisions of the Federal Cable Act that address different modalities of so-called 'cable theft.'" *J & J Sports Prods., Inc. v. Mayreal II, LLC*, 849 F. Supp. 2d 586, 588 (D. Md. 2012).

First, Plaintiff has properly alleged that Studio did not pay for a commercial license to distribute the fight but showed it at Studio anyway. *See* ECF 8, at 6–7 ¶ 24 (alleging that "without paying Plaintiff a fee or entering into an agreement with Plaintiff or its authorized agent for commercial exhibition, [Defendants] unlawfully intercepted, received and/or de-scrambled Plaintiff's encrypted signal and did exhibit the [fight] at [Studio]"); ECF 29-7, at 4 (affidavit of Joe Hand, III stating same); ECF 29-10, at 1–3 (report of auditor Donovan Garrett). Though Plaintiff fails to specify *exactly* how Defendants intercepted the program and showed it at Studio, "that omission is not fatal." *Joe Hand Promotions, Inc. v. Luz, LLC*, Civ. No. DKC 18-3501, 2020 WL 374463, at *2 (D. Md. Jan. 23, 2020). "The complaint need not specify the precise method of interception, as pleading in the alternative is permitted." *Id.* (citing *Joe Hand Promotions, Inc. v. Md. Food & Entm't, LLC*, Civ. No. CCB-11-3272, 2012 WL 5879127, at *4 (D. Md. Nov. 19, 2012)). "Instead, Plaintiff need only allege, . . . that a business entity 'intercepted and displayed the Program at its establishment, without authorization from [Plaintiff], on a particular date and at a particular time.'" *Id.* (quoting *Md. Food & Entm't, LLC*, 2012 WL 5879127, at *4). Here, Plaintiff has alleged as much by claiming that Defendants "intercepted, received and/or de-scrambled Plaintiff's encrypted signal and did exhibit the [fight] at [Studio]" without the proper license to do so. ECF 8, at 7 ¶ 24. This is all that is required to allege liability under § 605. *See, e.g.*, *Adilio*, 2024 WL 29977869, at *2 (finding similar allegations sufficient allege liability under § 605); *Luz, LLC*, 2020 WL 374463, at *1 (same); *Beer 4 U, Inc.*, 2019 WL 5864499, at *1 (same); *Joe Hand Promotions, Inc. v. Redzone Blitz, LLC*, Civ. No. DLB-21-0581, 2024 WL 3276177, at *2 (D. Md. July 1, 2024) (same). Taking the facts in the amended complaint as true, Joe Hand owned the exclusive license to distribute the Canelo v. Charlo fight. ECF 8, at 2 ¶ 6. Studio never purchased a commercial license to show the fight but showed the fight anyway. *Id.* at 5 ¶ 17.

Thus, Studio violated § 605 by broadcasting the Canelo v. Charlo fight to its patrons on September 30, 2023 without a permission from Joe Hand.

As to the Smiths, vicarious liability under the relevant statute may extend to individual defendants where they had the "'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct." *Mayreal II*, 849 F. Supp. 2d at 589 (quoting *J&J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009)). As such, to "prove vicarious liability as to each individual Defendant, Joe Hand must plead facts which, taken as true, demonstrate that" the Smiths (1) were present at the restaurant when the fight was displayed; (2) personally authorized the interception and display of the fight; (3) authorized advertising of the fight; or (4) imposed a cover charge to profit from the broadcast. *Adilio*, 2024 WL 2977869, at *3. Using these factors as a guide, Joe Hand has established that both Smiths are vicariously liable for the violation of § 605.

The amended complaint alleges that both Smiths have an ownership interest in Studio, ECF 8, at 3 ¶ 9, and "received a financial benefit from the operations of [Studio] on September 30, 2023." ECF 8, at 4 ¶ 11. The amended complaint also attaches the Maryland Articles of Organization identifying K. Smith as the resident agent of Studio and identifying both Smiths a "authorized persons" as it relates to the registration of Studio. ECF 8-3, at 1. Standing alone, these allegations, even though supported by attached documents, would likely be insufficient to establish vicarious liability for the unlawful exhibition of the fight on September 30, 2023. *See Mayreal II, LLC*, 849 F. Supp. 2d at 592 (finding no liability were the only specific factual allegations made with respect to alleged benefit from the unlawful broadcast of an event at a bar was that one alleged owner was the bar's resident agent and both alleged owners were on the liquor license); *Adilio*, 2024 WL 2977869, at *3 (finding no liability where the plaintiff "averred in a

conclusory fashion that the Defendants, as co-owners, exerted general 'supervisory capacity and control over the activities occurring'; had 'close control over the internal operating procedures and employment practices'; and benefitted financially from the restaurant"); *Redzone Blitz, LLC*, 2024 WL 3276177, at *3 ("The Court cannot find [a defendant] liable for [a Section 605] violation based only on an apparent representation on his personal Facebook page that he was the establishment's owner.").

However, Plaintiff also attaches to the amended complaint social media posts and other evidence reflecting that both Smiths had an ownership interest in Studio *and* operated it at the time the fight was shown.  ECF 8-2, at 1.  For example, K. Smith's social media advertises the opening of Studio as a joint partnership with A. Smith, and invites followers to "follow us" on two social media platforms identified as belonging to Studio.  ECF 8-2, at 1; ECF 29-4, at 1.  One of those Studio accounts later advertises Studio's broadcast of the Canelo v. Charlo fight.  ECF 8-4, at 1; 8-5, at 1.[6]  Thus, Plaintiff has pleaded, and provided evidence in support, that the Smiths were present at Studio when the fight was shown, authorized the interception and display of the fight by advertising it on Studio's social media, *and* imposed a cover charge to profit from the broadcast. Plaintiff has shown that both Smiths are vicariously liable for the violation of § 605.  *See Joe Hand Promotions, Inc. v. Hill*, Civ. No. 21-557-PX, 2022 WL 5245728, at *3 (D. Md. Oct. 6, 2022) (finding liability where an alleged owner "was on premises during the broadcast" of the pirated broadcast and "oversaw operations that evening, including charging a cover at the door").

---

[6] It bears noting that Plaintiff also provides evidence that both Smiths were present *and* working at Studio on September 30, 2023 while the Canelo v. Charlo fight was showing on Studio's two televisions, with A. Smith collecting cover charges at the door and K. Smith serving foods and drinks.  ECF 29-3, at 1; ECF 29-10, at 3.

### B. Damages

Having established that Studio and the Smiths are liable for a violation of § 605, the inquiry shifts to damages. A plaintiff may recover statutory damages of "a sum of not less than $1,000 or more than $10,000, as the court considers just," for a violation of § 605. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). Such "statutory damages should approximate the amount [] Plaintiff is out-of-pocket due to the violation." *Luz, LLC*, 2020 WL 374463, at *2. Joe Hand has alleged that since the lawful occupancy of Studio was approximately "50-100 people on September 30, 2023," ECF 8, at 4 ¶ 15,[7] the cost of a license for Studio to show the Canelo v. Charlo fight could be "no less than $1,750." ECF 29-1, at 18; *see also* ECF 29-8, at 1 (displaying rates for licenses). Accordingly, the Court finds that Joe Hand is entitled to $1,750 in statutory damages. *See, e.g.*, *Redzone Blitz, LLC*, 2024 WL 3276177, at *3 ("According to Joe Hand's rate card attached to the motion for default judgment, the cost of licensing the program for an establishment with a capacity of 201 to 300 people was $3,200."); *Hill*, 2022 WL 5245728, at *3 ("Here, the fees otherwise due to Joe Hand—$1,450 based on the maximum occupancy of Invictus—represent a reasonable and just award."); *Adilio*, 2024 WL 2977869, at *3 (assessing $3,550 in statutory damages as "a rough approximation for the harm the unlicensed broadcast visited on the plaintiff" when the plaintiff estimated that the defendants' establishment would have been charged "a licensing fee of between $2,700 and $3,550").

Joe Hand also seeks "enhanced damages" of $25,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) because it views Defendants' violation of the Communications Act as willful.

---

[7] This estimate of capacity is verified by Defendants' own social media posts, which advertises the ability to provide "tables and chairs for 50 guest[s]" for events held at Studio. ECF 29-5, at 4. It is reasonable to conclude that even more guests can be accommodated if tables and chairs were removed, thus easily pushing the threshold capacity over 50.

ECF 29-1, at 20. "Enhanced damages may be awarded up to $100,000 against a defendant who violated the statute 'willfully and for purposes of direct or indirect commercial advantage or private financial gain.'" *Adilo*, 2024 WL 2977869, at *3 (quoting 47 U.S.C. § 605(e)(3)(C)(ii)). "When the defendant committed the violation willfully and for the purposes of substantial financial gain, enhanced damages are appropriate to 'deter potential future unlawful uses of communications.'" *Redzone Blitz, LLC*, 2024 WL 3276177, at *3 (quoting *Luz*, 2020 WL 374463, at *2). The factors that guide the Court's assessment of a request for enhanced damages include "(1) evidence of willfulness; (2) repeated violations over an extended period of time; (3) substantial unlawful monetary gains; (4) advertising the broadcast; and (5) charging an admission fee or charging premiums for food and drinks." *J & J Sports Prods., Inc. v. Quattrocche*, Civ. No. WMN-09-3420, 2010 WL 2302353, at *2 (D. Md. June 7, 2010). Further, "[c]ourts in this District have regularly looked to the statutory damages award as a baseline for determining enhanced damages, multiplying that baseline sum by some number based on the egregiousness of a defendant's conduct." *Joe Hand Promotions, Inc. v. Phillips*, Civ. No. 20-2261-SAG, 2021 WL 2861517, at *3 (D. Md. July 8, 2021). "Depending on the 'egregiousness of a defendant's conduct,' courts usually award enhanced damages of two to five times the statutory damages." *Redzone Blitz, LLC*, 2024 WL 3276177, at *3 (citing *Joe Hand Promotions, Inc. v. Up at Night, LLC,* Civ. No. GJH-21-580, 2023 WL 375188, at *3 (D. Md. Jan. 23, 2023)).

Here, there can be no dispute that Defendants "intercepted and exhibited" the Canelo v. Charlo fight "willfully and for direct or indirect commercial advantage." *Luz, LLC*, 2020 WL 374463, at *2. As Joe Hand notes, the fight "could not have been inadvertently intercepted," ECF 29-1, at 19, a point that other judges of this Court have often repeated in cases with similar facts, *see Redzone Blitz*, LLC, 2024 WL 3276177, at *4 (noting that "signals do not descramble

spontaneously, nor do television sets connect themselves to cable distribution system") (quoting *J & J Sports Prods., Inc. v. KD Retail, Inc.*, Civ. No. PX-16-2380, 2017 WL 1450218, at *2 (D. Md. Apr. 20, 2017)). Joe Hand also provides evidence that Defendants advertised the showing of the fight in advance on social media and collected a $40 cover charge at the door. ECF 8-5, at 1.[8] Plus, Defendants chose not to participate in this litigation despite receiving ample notice of it. Though this appears to be Studio's first violation of this kind, and a review of Garrett's recording of his visit on the night of the fight reflects that the event did not appear to draw a large crowd, application of the *Quattrocche* factors nonetheless counsel an award of three times the statutory damages. Accordingly, the Court will award an additional $5,250 in enhanced damages.

Joe Hand also seeks to recover full costs of the litigation pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). ECF 29-1, at 23. "The party seeking fees bears the burden of proving the reasonableness of the amount sought." *J & J Sports Prods. v. Mumford*, Civ. No. DKC-10-2967, 2013 WL 210623, at *2 (citing *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009)). Joe Hand seeks a total of $1,535.00 and provides evidence supporting that request. *See* ECF 1 (reflecting payment of a $405 filing fee); ECF 29-6, at 1 (invoice for a $380 service fee); ECF 29-6, at 2 (invoice for a $750 investigation fee). This request will be granted as it is reasonable and supported. *See Adilio*, 2024 WL 2977869, at *4 (awarding similar costs and fees).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Joe Hand's motion for default judgment will be granted, except that it is denied in part as the Court does not award Plaintiff the full award of damages sought. Joe

---

[8] Though food and one drink were included in the price, additional drinks were for offered sale. ECF 8-5, at 1. Moreover, despite the advertised presence of a DJ, the social media advertisement makes clear that the Canelo v. Charlo fight was the main attraction at Studio on the night of September 30, 2023.

Hand is awarded judgment against all Defendants for count one, jointly and severally, for statutory and enhanced damages in the amount of $7,000, plus costs and fees of $1,535, for a total judgment of $8,535.  All remaining claims are dismissed for failure to prosecute.  A separate implementing Order will issue.

Dated: <u>February 6, 2025</u>                         <u>                /s/                </u>
                                                        Brendan A. Hurson
                                                        United States District Judge